SHARP, W., J.
Mutual of Omaha (Mutual)[1] appeals from two final summary judgments entered in favor of the Golds and Florida Medical Association (FMA). Mutual presents several arguments on appeal, only one of which has merit. Mutual claims that the trial court erred in failing to grant its motion to amend its affirmative defenses. We agree and reverse.
The facts of this case are not in dispute. Jay Gold is a physician and the father of the minor Ethan; Jill Gold is Ethan’s mother. Dr. Gold was a member of FMA, and Ethan was insured under a group health insurance policy (the policy) which was underwritten and issued by Mutual to FMA. FMA was the policyholder, and the policy insureds were the member-doctors of FMA.
The policy was administered by Flamed-co, Inc. (Flamedco), a wholly-owned, for profit subsidiary of FMA, and as originally issued it was effective September 1, 1985. Under its terms, each insured had generous health insurance coverage: $1 million per year, per insured. The premium was determined on a retrospective basis, depending on the claims experience of FMA insureds. If the claims were less than the premiums collected, Mutual made a return of the excess premiums to FMA.
Beginning in September of 1989, FMA and Mutual entered into a series of Premium Stabilization Fund Agreements (individually and collectively referred to as PSF)[2] which created a fund (the Fund) in which Mutual was to “hold and retain” an amount equal to or greater than $2,000,000. If the total year’s claims were less than the Fund amount, the remaining monies were to be returned to FMA. If policy deficits[3] exceeded collected premiums, Mutual had the right to debit the Fund up to the amount of the deficits.
In August of 1986, Ethan was diagnosed as suffering from adrenoleukodystrophy (also known as ALD), which is a degenerative neurological system disease, and results in the loss of all muscular coordination in all parts of the body. Flamedco began paying claims for private duty nursing services on Ethan’s behalf. But in September of 1987, it was determined that Ethan did not require this level of care, and coverage for further nursing expenses was denied. The Golds filed a lawsuit for injunctive relief against Flamedco and Mutual, which was settled. The terms of the settlement included Mutual’s agreement to pay 100% of the nursing care services provided to Ethan, and to pay $5,000 for legal services. The settlement did not provide for termination of the policy by either its cancellation, or by FMA or the Golds’ obtaining new insurance.
The policy was subsequently amended, effective March 1, 1992. The new policy reduced the insurance coverage cap from $1 million per year, to $1 million per lifetime. The Golds again sued Mutual and Flamedco. During the pendency of the lawsuit, FMA and Mutual agreed to terminate the policy, effective December 30, 1992. As a result, FMA asked for and received over a period of time, a total of $4,224,484.41 of the Fund leaving a remaining balance of approximately $400,000. FMA also procured replace *121 ment coverage under a policy issued by John Hancock, which provided $1 million lifetime coverage for the member-insureds, including Ethan.
FMA and Flamedco settled with the Golds for $500,000, and made the Golds assignees of the claim it had against Mutual for the $400,000 Fund balance. The assignment specifically provided that FMA “hereby assigns to [the Golds] both individually and on behalf of their minor son, Ethan Gold, .... $400,000.00 in disputed premium stabilization fund monies.... ” The assignment also provided that FMA assigned all of its right, title and interest to the Golds in the cause of action it had against Mutual for recovery of the $400,000.00.
Subsequently, Mutual also settled with the Golds.[4] Under the terms of this favorable settlement, the Golds received full health insurance coverage for Ethan, after his coverage under the John Hancock policy was exhausted. The Golds were not required to pay any premiums or deductions to Mutual,' nor were they required to procure additional health insurance. Mutual also paid the Golds a lump sum of $150,000 and agreed to pay attorneys’ fees, as decided by the court. The court subsequently awarded the Golds $428,010 in attorneys’ fees.
After the settlements, the Golds amended their complaint to assert a new cause of action: their entitlement to the $400,000 remaining in the Fund, as assignees of FMA. Mutual sued FMA for a return of the $4,224,484 based on its payments to the Golds under the settlement, on the theory that when the money was returned, the parties were operating under a mutual mistake of fact. FMA denied responsibility and sued the Golds.
Motions for summary judgment were filed by all of the parties. Mutual also filed a motion to amend its affirmative defenses, which was noticed for hearing, discussed at the summary judgment hearing, and denied. The trial court ultimately granted the Golds and FMA’s motions for summary judgment, and the Golds were thereby awarded the $400,000 in the Fund, with prejudgment interest of $128,986.30, for a total of $528,986.50. The court also reserved jurisdiction to award attorneys’ fees and costs.
On appeal, Mutual argues that the trial court erred in failing to grant its motion to amend its affirmative defenses. The basis of this argument is that the Golds, as assignees, have no greater rights than the rights of FMA, the assignor, Guaranty Mtg. & Ins. Co. v. Harris, 193 So.2d 1 (Fla.1966); Lockett v. Robinson, 31 Fla. 134, 12 So. 649 (1893); Cole v. Angora Enterprises, Inc., 403 So.2d 1010 (Fla. 4th DCA 1981), approved, 439 So.2d 832 (Fla.1983); Alderman Interior Systems, Inc. v. First National-Heller Factors, Inc., 376 So.2d 22 (Fla. 2d DCA 1979); and that the assignment from FMA to the Golds de facto assigned all of the premium refund to one policy beneficiary in violation of section 627.569.[5]
Section 627.569 provides:
If a dividend, premium refund, rate reduction, commission, or service fee is received by any employer, labor union, or association, under any and all group insurance policies ... to which ... employees or members contribute to the cost of the premiums for such insurance, *122 the excess, if any, of the aggregate of such dividends, premium refunds, rate reductions, commissions, and semce fees over the aggregate expenditure of such employer, labor union, or association towards the cost of such insurance, includes its administration, for the current and preceding 2 years to the extent they were not defrayed by dividends, premium refunds, rate reductions, commissions, and service fees, shall be applied by the policy holder for the sole benefit of insured employees or members on a basis which precludes individual selection and unfair discrimination. If such dividend, premium refund, rate reduction, commission, or service fee is received by a trustee fund, it shall be applied by the trustees for the sole purposes of the trust. (Emphasis supplied)
We conclude that this argument has merit. The clear language of the statute evidences the legislature’s intent that it apply where an “association” provides group insurance benefits to “members” and those members contribute to the cost of the premiums. In such instances, the statute requires that any dividends, premium refunds, rate reductions, commissions or service fees received “shall be applied by the policyholder for the sole benefit of insured ... members on a basis which precludes individual selection and unfair discrimination.” (Emphasis supplied). Pursuant to section 627.568, a policy holder cannot preference an individual insured with all, or an unequal portion of dividends, premium refunds, rate reductions, commissions or service fees. If the trial court finds that the facts of this case fall under the ambit of section 627.569, the assignment would be. invalid under the statute.[6]
The trial court therefore erred in denying the motion to amend. We note too that prior to this motion, Mutual had not requested leave to amend its affirmative defenses. The amendment does not require additional discovery. Florida has a liberal rule governing amendments to pleadings, and leave to amend should be freely given when justice so requires. Fla. R. Civ. P. 1.190(a); Craig v. East Pasco Medical Center, Inc., 650 So.2d 179, 180 (Fla. 2d DCA 1995). Failure to do so constitutes an abuse of discretion. See, Johnson v. Headley, 419 So.2d 401 (Fla. 4th DCA 1982)(abuse of discretion to deny motion to amend affirmative defense where motion made in advance of hearing on summary judgment motion).
For these reasons, we reverse the summary judgments and remand to the trial court for further proceedings.
REVERSED AND REMANDED.
PLEUS and ORFINGER, R.B., JJ., concur.

. United of Omaha Ins. Co. was an intervener in this lawsuit, but the parties are collectively referred to as "Mutual.”

. The various PSF agreements are virtually identical; the only change being the amount of interest to be credited to the Fund by the Insurance Companies. The last PSF was executed on December 28, 1992.

.Policy deficits included the excess of claims incurred plus policy charges over and above earned premiums.

. The settlement specifically reserved Mutual’s right to any and all claims it may have against Flamedco and FMA.

. This section was made applicable to health insurance policies pursuant to § 627.658, Fla. Stat.

. § 627.664(1), raised by the Golds, pertains to an insured or owner of a policy, not the policy holder. FMA is the policy holder in this case; it is not an insured or owner of the policy.